## Case No. 5,426.

### GILL et al. v. JACOBS.

[Brunner, Col. Cas. 268;[1] 6 Hall, Law J. 117.]

Circuit Court, D. South Carolina. June 27, 1816.

STATE INSOLVENT LAW — EFFECT OF DISCHARGE UNDER.

A discharge under a state insolvent law does not entitle a defendant, in the custody of the United States courts on mesne process, to be released on common bail.

[At law. Action of debt by Gill, Canonge & Co. against Levi Jacobs.]

DRAYTON, District Judge. This was a case of habeas corpus, in which a motion was made to discharge defendant on common bail, he being in the marshal's custody on mesne process issuing from this court, with an order for bail. The plaintiffs are citizens of Philadelphia; and the debt to a considerable amount (upwards of six thousand dollars) was contracted with them there. The defendant having been arrested by process, issuing from the state court of common pleas, has been discharged by the same authority, under the insolvent debtor's act of this state, passed in the year 1759. He therefore contends he should be enlarged on giving common bail, as he has been arrested since he was so discharged. On the part of the plaintiffs it is urged they were not parties to this discharge, not having due notice; nor were they parties to the record. That they have not agreed to receive any portion of the dividends, and, therefore, they ought not to be delayed, or prevented having due relief, under the laws of the United States and the practice of this court.

The case before me being strictly a mercantile contract will be considered as referring to those laws which relate to commerce and merchandise. As respects their principles, it is contended there is a difference between a bankrupt and an insolvent debtor; as the first becomes so by omissions and commissions, as well as by compulsory process; whereas, the latter is so situated, by the effects of a suit at law, and by taking the benefit of an insolvent debtor's act thereupon, for regaining his liberty. This distinction, and the discharge obtained in the state court, appear to be the general grounds on which the argument seems to rest. For bankrupts being exclusively concerned in trade and merchandise, in buying and selling in gross, or by retail; dealing in ex-

---

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

change and in other acts of necessary commercial intercourse; it seems but reasonable they should be protected and controlled by laws more especially for themselves, and which the practice of civilized nations is in the habit of ordaining. Hence a bankrupt law may be very different from an insolvent debtor's act, as a bankrupt law relates to the interest of merchants and traders; whereas, an insolvent act relates to the general interest of society. If, then, this distinction of interest prevail, can it be said the distinction of rights does not also prevail?

By the eighth section, first article, of the United States constitution, congress have a right "to regulate commerce with foreign nations, and among the several states," also to establish "uniform laws on the subject of bankruptcies throughout the United States." The power, then, of making bankrupt laws no longer remains with the several states; it is vested in the United States government. And how far a transient merchant, indebted in Philadelphia, can plead in this circuit court for the district of South Carolina a discharge under the insolvent debtor's act of South Carolina, obtained in the state court, against a suit instituted in this court, is the question which is now before me. On this point, involving the rights of the United States and individual states, I feel myself delicately situated in deciding the contending claims. More especially, as one of the particular reasons for calling into existence the present constitution of the United States was to equalize the commerce and trade, and the rights and privileges of the American and other merchants and traders throughout the Union, and with foreign nations. Unless, then, the question be considered as having this grand object in view, the merits of this case will be carried back to where they would have been before the passing of the constitution. The lex loci and lex fori of the several states would be brought under special consideration, as having more controlling powers than I think ought to be admitted at this day. Each state would then by such reasoning be deemed to authorize discharges of insolvency according to its own laws, and in mercantile concerns; not by uniform laws resting on the same principles, and promoting the same ends, but sometimes conflicting in points of justice and expediency not only with themselves but with the United States, and the principles of their superintending government.

On the 4th of April, 1800 [2 Stat. 19], a bankrupt law was passed. It was limited to the term of five years; and from thence to the end of the next session of congress thereafter, and no longer. It then expired, and there has never been since any bankrupt law in the United States. What were the reasons which influenced congress not to revive that act, or not to pass a new one, is not for me to say. Although it would appear that the different decisions which take

place in the courts of the United States, and in those of the individual states, afford some grounds for the reconsideration of a bankrupt law; as well as the great inconvenience resulting from the want of one to which parties are occasionally subjected, by vexatious suits in different states of the Union against insolvent debtors, after they have obtained insolvent discharges in one of the states. In passing the bankrupt law it is evident congress looked towards bankrupt merchants and traders especially, as respecting the insolvent act of state authorities. For in the sixty-first section of the bankrupt law—5 Smith's Laws U. S. p. 81 [2 Stat. 36]—it is expressly enacted that this act shall not "repeal or annul, or be construed to repeal or annul, the laws of any state now in force, or which may be hereafter enacted, for the relief of insolvent debtors, except so far as the same may respect persons who are or may be clearly within the purview of this act." It is said, however, this act has expired; it does not thence follow that the reasons which gave rise to the exception do not still exist. And so far it does not come within the rule of "cessante ratione, cessat et ipsa lex." If, then, they do exist, I see not why for national and commercial purposes this court should not give them a consideration, although they be not engrafted into a bankrupt law. Under this impression it would seem the distinction taken by the defendant's counsel between a bankrupt law and an insolvent debtor's act has not been improperly introduced.

Among the great features of government, population and credit are to be ranked. As to the population, congress has equalized that by acts of naturalization throughout the United States; but having no bankrupt law, the credit as to provisions for bankrupts, and for securing the rights of their creditors, has not been so equalized, resting at present upon the insolvent acts of individual states, and the discretion and decisions of courts having cognizance. It hence results that foreigners and citizens of different states will look to the government of the United States for some general system, as either emanating from their laws or from their courts; and more particularly when they commence suits in the courts of the United States. The obligation is, therefore, the more imposing upon these courts, having this high responsibility to carry all such suits into effect in as uniform a manner as possible, so far as their authorities will permit, agreeably to the rights and just expectations of individuals, and the confidence so reposed in the United States government.

It is urged, this court is bound in this case by the thirty-fourth section of the judiciary act [1 Stat. 74]; but I do not see for what reason, as I think it can be made to appear the meaning of that section as contended for does not at present apply. By that instrument it is enacted "that the laws of the several

states, except where the constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decisions in trials at common law in the courts of the United States where they apply." As it is not necessary on the present occasion to give an opinion respecting the discharge of an insolvent debtor against the debt itself, I shall not do so, but will confine myself to that part of the state act which enacts that the discharged debtor shall not be liable to be sued, impleaded, or arrested for a twelve month after his discharge. Grimke's Laws S. C. 249, § 2. Can it be said this part of that act applies? Does it not impair the security of the contract between Jacobs, the defendant, and Gill, Cononge &. Co., the plaintiffs? and if it do, is it not in direct opposition to the constitution of the United States? These are important questions, which should be well considered before a decision take place. As to any inconvenience which may arise to the defendant under arrest, it remains with himself to give bail and be liberated from his confinement; if he cannot or will not this court is obliged to perform its duties in the premises, however desirous it may be to relieve his personal necessities. And in doing so, I cannot but say that were the present motion to be sustained, and the defendant admitted to common bail, the security of the plaintiffs would be much weakened and perhaps might be forever lost. For the state court is in possession of his schedule and property, given up upon his discharge, said by no means to be equal to the payment of his debts allowed in that court. Of course the defendant has nothing to rest his suit upon in this court but the defendant's person or security for the same, without which the defendant might abscond to whatever quarter of the world he pleased, thereby weakening, if not forever nullifying, his creditor's just demands. The reasoning of Judge Washington, in the case of Golden v. Prince [Case No. 5,509], and of Judge Story, in Van Reimsdyk v. Kane [Case No. 16,871], strengthen my opinion on this head. As to the cases cited from 1 Dall. [1 U. S.] 231, and 2 Dall. [2 U. S.] 100, [Millar v. Hall, and Donaldson v. Chambers], they are between state authorities, and in my opinion do not apply any more than the insolvent act of this state may be said to apply to the present case. Whenever the final discharge is brought before this court in bar of this suit, and at a proper stage of the pleadings, it will be time enough to consider its bearing character as to discharging the debt.

By the eleventh section of the judiciary act, —1 Folwell's Laws U. S. p. 55 [1 Stat. 74],— the circuit court has cognizance where an alien is a party, or a suit is between a citizen of the state where the action is commenced and a citizen of another. This gives authority to the circuit court to maintain the action, and is an implied contract between the United States and the parties concerned that it shall be so maintained. But if a state law be allowed to come in with a sweeping effect as a bar to the action, confidence is at an end, and the court is at the mercy of a state authority. Van Reimsdyk v. Kane [supra]. Upon this principle the impropriety of the motion in this incipient stage of the suit, and before the return of the writ, is, in my opinion, apparent, insomuch as to induce a court to be on its guard how it allows the claims of an individual under arrest, when a little time and a regular practice would better conduce to justice and the end proposed. Besides, by the laws and practice of this court, a defendant cannot take the benefit of the insolvent acts until after judgment obtained,— 4 Folwell's Laws U. S. p. 123 [1 Stat. 561]; 5 Smith's Laws U. S. p. 6 [2 Stat. 4],—whereas in the state court he has the benefit of them on mesne process before judgment obtained. This marks a difference between the practice of the United States courts and the state courts as to cases of solvency, which is of importance in this inquiry. It consequently results that the security of the creditor in the court of the United States is greater than in the courts of this state, as he has a longer time to search out cases of fraud against his debtor, and is thereby the better enabled to provide for his own security before the debtor can be liberated or discharged under insolvent debtor acts.

Upon the whole, without touching any other contested points of the argument (deeming it unnecessary in the opinion I am about to give), the case appears to me to resolve itself into this: That by the constitution of the United States the individual states have given up their rights of legislating as to commerce and bankruptcy; that this right is now solely in possession of the United States government, which, through its laws and judiciary, is bound to watch over and superintend the same; that no bankrupt law existing at this time does not affect the main question, because the right in government still remains to enact one, or to repose its confidence in the judiciary as to their decision respecting the same, in relation to the state laws; that the courts of the United States by admitting defendants to the benefit of the state insolvent acts, under the superintending and contracting power of the laws of the United States now existing, can and do promote the due ends of justice as relating to bankrupts. But it must be remembered all this is done under the authority of the United States and not under that of state authorities, although in doing so the insolvent acts of the states are referred to as rules of decisions in cases when they apply, as declared by the thirty-fourth section of the judiciary act. Under these impressions I do not think that by insolvent discharges from the courts of this state the insolvent debtor's acts of this state should be allowed to suspend or weaken the lien of process in this court, in the manner contended for in this case. It would be an interference

between creditors and debtors, and certainly would tend to impair the obligation of contracts.

[See Ogden v. Saunders, 12 Wheat. (25 U. S.) 286.]